## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

_____

RANDALL SCOTT TIFFANY,

                Plaintiff,

    v.

NEW YORK STATE VETERAN'S
HOME, _et al._,

                Defendants.

_____

Civil Action No.
3:15-CV-0108 (MAD/DEP)

APPEARANCES:

OF COUNSEL:

FOR PLAINTIFF:

RANDALL SCOTT TIFFANY, _Pro se_
334 Brown Gale Road
McDonough, NY 13801

FOR DEFENDANTS:

[NONE]

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

### REPORT, RECOMMENDATION, AND ORDER

Plaintiff Randall Scott Tiffany has commenced this action against the

New York State Veterans Home ("Home") and five individuals, including the

facility's medical director and acting administrator, alleging that the

defendants have violated his rights under the Family and Medical Leave Act

("FMLA"), 29 U.S.C. § 2601 *et seq.* Specifically, plaintiff alleges that his employment with the Home was terminated after he requested FMLA leave and complained concerning the actions of his employer. Plaintiff's complaint seeks, *inter alia*, the retirement benefits earned by him during his thirty-two year employment with the Home, medical insurance coverage for life, and compensatory damages in the amount of $10 million.

Based upon my review of plaintiff's complaint and accompanying application for leave to proceed *in forma pauperis* ("IFP"), both of which have been forwarded to me for consideration, I will grant plaintiff's IFP application and recommend that his complaint be accepted for filing to the extent he asserts a retaliation claim against certain individuals.

I.    BACKGROUND

Plaintiff, a former employee of the Home, commenced this suit on January 21, 2015. Dkt. No. 1. The claims in this action arise from a confrontation that occurred on April 2, 2013, between the plaintiff and a co-worker, defendant Cynthia Fairchild. *Id.* at 4. On April 17, 2013, plaintiff was questioned about the incident by defendant Deborah Murphy, his supervisor. *Id.*, at 4, 5-6. Following his meeting with defendant Murphy, plaintiff submitted a request for FMLA leave and scheduled an appointment to meet with his social worker. *Id.* at 6-7. Thereafter, plaintiff was absent

from work during the months of May, June, and July 2013. *Id.* at 8. Throughout that time, and after, plaintiff made complaints to the Office of the New York State Inspector General ("IG") and to New York State Governor Andrew Cuomo concerning what he perceived to be "corrupt and illegal actions" on the part of the administration at the Home. *Id.* at 7-9.

Plaintiff returned to work on July 29, 2013. Dkt. No. 1 at 9. On August 6, 2013, he was notified by defendant Susan Parker, who is identified by plaintiff as the Home's Nutritional Services Administrator 2, that he was being counseled for threatening defendant Fairchild and that a notice of the disciplinary action would be placed in his personnel file. *Id.* at 4, 11. Following that meeting plaintiff left the facility out of concern for his "health and safety" and contacted the offices of the IG and Governor Cuomo. *Id.* at 12.

On August 8, 2013, plaintiff was directed by defendant Bonnie Norton, Director of Human Resources for the Home, to undergo a medical examination, scheduled for September 9, 2013, for the purpose of determining his fitness for duty. Dkt. No. 1 at 13. Tiffany was advised not to return to work until the required examination was completed. *Id.* at 13, 16. Plaintiff failed to appear for the scheduled appointment, however, relying on a note from his physician that indicated it was medically necessary for him

to be absent from work whenever there was a conflict in the work environment. *Id.* at 13.

On September 12, 2013, plaintiff received a notice directing him to appear on September 18, 2013, to participate in an investigation concerning allegations of misconduct. Dkt. No. 1 at 14. Feeling threatened by the defendants and afraid to go near the Home, plaintiff did not report as directed. *Id.* Plaintiff was subsequently notified by defendant Norton, on September 23, 2013, that he was being placed on involuntary leave without pay. *Id.* at 17.

Plaintiff received a disciplinary notice on October 2, 2013, addressing multiple, allegedly unauthorized absences. Dkt. No. 1 at 15. On October 6, 2014, plaintiff received a notice from defendant Norton informing him that his employment was being terminated. *Id.* at 15-16. Plaintiff subsequently filed a written complaint to Courtney Burke, the Deputy Secretary for Health, on October 14, 2013.[1] *Id.*

---

[1]     Plaintiff's complaint does not specify the nature of the complaint sent to Burke.

II.    DISCUSSION

A.    IFP Application

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a).[2] A court is authorized, however, to permit a litigant to proceed IFP if it determines that he is unable to pay the required filing fee. 28 U.S.C. § 1915(a)(1). In this instance, because I conclude that plaintiff meets the requirements for IFP status, his application for leave to proceed IFP is granted.[3]

B.    Review of Plaintiff's Complaint

1.    Standard of Review

Because I have found that plaintiff meets the financial criteria for commencing this case IFP, I must next consider the sufficiency of the claims set forth in his complaint in light of 28 U.S.C. § 1915(e). Section 1915(e)

---

[2]    The language of that section is ambiguous, in that it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). Courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[3]    Plaintiff is advised that, although his IFP application has been granted, he will still be required to pay fees that he incurs in this action, including copying and/or witness fees.

directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). However, the court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g.*, *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the

6

complaint.'" *Aguilar v. United States*, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court looks to applicable requirements of the Federal Rules of Civil Procedure for guidance. Specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, J.) (quotation marks and italics omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations in a light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

       2.    <u>Analysis of Plaintiff's Claims</u>

       a.    <u>Denial of FMLA Leave</u>

The essence of plaintiff's claims in this action against the six named defendants is not easily discerned. Plaintiff states that on or about April 17, 2013, he "filled out a leave slip for F.M.L.A. [leave]." Dkt. No. 1 at 6.

Plaintiff's complaint only states that he "felt afraid and threatened," but otherwise fails to elaborate concerning the nature of or basis for the leave requested. *Id.* Although plaintiff alleges his doctor provided him a "return to work notice dated July 15, 2015," which stated that it was "medically necessary for the plaintiff to be absent from work when there conflicts [sic] in the work environment," the complaint fails to allege any facts revealing plaintiff's medical condition. *Id.* In addition, and significantly, plaintiff's complaint does not state whether his request for FMLA leave was granted or denied. For this reason, to the extent that plaintiff's complaint could be construed as asserting a claim under the FMLA based on the Home's failure to approve a request for FMLA leave, I recommend that it be dismissed.

### b.    Retaliation Under the FMLA

Plaintiff's complaint also appears to assert a retaliation claim based on allegations that he was unlawfully discharged for either requesting FMLA leave and/or complaining to the IG and New York State governor concerning defendants' actions toward him. Under the FMLA, eligible individuals are guaranteed twelve workweeks of leave during any twelve-month period for certain specified reasons, including in the case of "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D);

9

*Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174 (2d Cir. 2006). A leave of absence available under section 2612(a)(1)(D) may be taken for a continuous period of time or intermittently "when medically necessary." 29 U.S.C. § 2612(b)(1); *Di Giovanna v. Beth Israel Med. Ctr.*, 651 F. Supp. 2d 193, 196-97 (S.D.N.Y. 2009).

In addition to entitling an employee to leave, the FMLA also prohibits interference with rights, proceedings, or inquiries under the Act. 29 U.S.C. § 2615. Courts have recognized that 29 U.S.C. § 2615 admits of two distinct types of claims, one alleging that an employer has interfered with an employee's FMLA rights, and the other claiming the employee has been retaliated against for having exercised such rights. *Sista*, 445 F.3d at 176; *Kaufman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005); *Potenza v. City of N.Y.*, 365 F.3d 165, 167 (2004); *Hodgens v. Gen. Dynamic Corp.*, 144 F.3d 151, 159-60 (1st Cir. 1998). In this case, plaintiff asserts only a retaliation claim against the defendants without specifically citing the FMLA provision on which his claim relies.

Although the Second Circuit has not expressly identified which of the FMLA's provisions give rise to retaliation claims, it has suggested that both sections 2615(a)(1) and 2615(a)(2) prohibit an employer's retaliation against an employee for exercising his rights under the statute. *See Millea*

*v. Metro N. R.R. Co.*, 658 F.3d 154, 164 (2d Cir. 2011) (identifying "[t]he FMLA's anti-retaliation provision" as section 2615(a)(2)); *Potenza*, 365 F.3d at 167 (referring to section 2615(a)(1) in the context of an FMLA retaliation claim); *see also Hodgens*, 144 F.3d at 159-60 (finding that sections 2615(a)(1) and 2615(a)(2) "provide[] protection in the event an employee is discriminated against for exercising . . . rights [created by the FMLA]"). Those sections provide as follows:

> (a) Interference with rights
>
> > (1) Exercise of rights
> >
> > It shall be unlawful for any employer to interfere with, restrain or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
> >
> > (2) Discrimination
> >
> > It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter . . . .

29 U.S.C. § 2615(a)(1), (a)(2).

In this case, plaintiff's complaint, when liberally construed, suggests that he was retaliated against for exercising his rights under the FMLA, a claim arising under section 2615(a)(1), and that he opposed practices by the Home, thereby potentially implicating section 2615(a)(2). *See Hale v.*

*Mann*, 219 F.3d 61, 68 (2d Cir. 2000) (citing section 2615(a)(1) in concluding that the FMLA "also protects an employee from discharge or demotion by an employer if that action is motivated by the employee's taking of leave"); *Brenlla v. LaSorsa Buick Pontiac Chevrolet, Inc.,* No. 00-CV-5207, 2002 WL 1059117, at *6 (S.D.N.Y. May 28, 2002) (construing a plaintiff's FMLA retaliation claim as "fall[ing] under section 2615(a)(1)" where the plaintiff had not specified the provision under which she sued); *see also* 29 C.F.R. 825.220(c) (recognizing that the FMLA's "prohibition against interference prohibits an employer from discriminating or retaliating against an employee . . . for having exercised . . .FMLA rights," but neglecting to cite a specific provision supporting a retaliation claim).

In analyzing retaliation claims under the FMLA where, as in this case, there is no direct evidence of retaliatory animus, courts in this circuit apply the familiar, evidence-production burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), which examined a retaliation claim brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq. See, e.g., Potenza*, 365 F.3d at 168; *Brown v. Northrop Grumman Corp.*, No. 12-CV-1488, 2014 WL 4175795, at *5 (E.D.N.Y. Aug. 19, 2014); *Mullins v. Bondib Hotels, Inc.*, No. 10-CV-4069, 2011 WL 6434328, at *2-6 (S.D.N.Y.

Dec. 22, 2011); *Di Giovanna*, 651 F. Supp. 2d at 203-08; *but see Serby v. N.Y. City Dep't of Educ.*, 526 F. App'x 132, 135 (2d Cir. 2013) (affirming the district court's grant of summary judgment "under either the *McDonnell Douglas* burden-shifting framework or the mixed-motive analysis," and thereby finding no "need to decide which [standard] applies to an FMLA retaliation claim"). Under the *McDonnell Douglas* protocol, a plaintiff "bears the initial burden of establishing a *prima facie* case of retaliation." *Di Giovanna*, 651 F. Supp. 2d at 203. At this early juncture, the court need only evaluate whether plaintiff has alleged sufficient facts regarding a *prima facie* case to survive initial review under section 1915(e).

To make out a *prima facie* case of retaliation under the FMLA, a plaintiff must establish that "(1) he exercised rights protected under the FMLA, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Donnelly*, 691 F.3d at 147 (quotation marks omitted); *accord, Potenza*, 365 F.3d at 168. An inference of retaliatory intent is "established when there is a basis for a [factfinder] to conclude that 'a causal connection exists between the plaintiff's protected activity and the adverse action taken by the employer.'" *Donnelly*, 691 F.3d at 152 (alteration omitted) (quoting *Mack v. Otis*

*Elevator Co.*, 326 F.3d 116, 129 (2d Cir. 2003)).

Mindful of the early stage of this litigation, as well as my obligation to liberally construe a *pro se* plaintiff's pleadings, I find that plaintiff's complaint should be accepted for filing. Plaintiff alleges that he exercised his rights under the FMLA, and that his employment was later terminated. He also contends that his loss of employment was preceded by complaints to the IG and New York State governor regarding defendants' allegedly unlawful practices, presumably in violation of the FMLA. Based on these allegations, I recommend that plaintiff be permitted to pursue his FMLA retaliation claim at this juncture.[4]

### c.    Individual Liability Under the FMLA

In addition to the Home, plaintiff has sued five individuals, including defendants Philip J. Dzwonczyk, the Home's Medical Director and Acting Administrator; Bonnie Norton, the Director of Human Resources; Susan Parker, whose official position is listed as Nutritional Services Administrator 2; Deborah Murphy, whose specific position is not identified but who, plaintiff alleges, was his supervisor; and Fairchild, whose title is also unknown but is identified as plaintiff's co-worker. Dkt. No. 1 at 2, 4. The next

---

[4]    As discussed more completely below in Parts II.B.2.c. and II.B.2.d. of this report, only plaintiff's FMLA retaliation claims asserted against defendants Dzwonczyk, Norton, Parler, and Murphy in their individual capacities seeking damages, as well as the retaliation claims asserted against those individuals in their official capacities seeking prospective injunctive relief, should survive.

issue to be addressed is whether an individual may be held liable under the FMLA.

The FMLA defines the term "employer" as follows:

The term "employer"—

(i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;

(ii) includes—

(I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and

(II) any successor in interest of an employer;

(iii) includes any 'public agency', as defined in section 203(x) of this title. . . .

29 U.S.C. § 2611(4)(A)(i)-(iii). Individuals may be liable under the FMLA "only if that person is an 'employer' within the definition of the statute." *See, e.g., Housel v. Rochester Inst. of Tech.*, 6 F. Supp. 3d 294, 315 (W.D.N.Y. 2014); *see also Singh v. N.Y. State Dep't of Taxation & Finance*, 911 F. Supp. 2d 223, 242 (W.D.N.Y. 2012). To inform the determination of whether an individual can properly be regarded as an employer, courts in this circuit

have considered whether the employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined at the rate and method of payment, and (4) maintained employment record." *Housel*, 6 F. Supp. 3d at 315 (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 3d 132, 139 (2d Cir. 1999)); *see also Noia v. Orthopedic Assocs. of Long Island*, --- F.3d ----, No. 14-CV-1730, 2015 WL 520368, at *3 (E.D.N.Y. Feb. 9, 2015) (applying the "economic reality" test, adapted under the Fair Labor Standards Act, to determine whether an individual may be held liable under the FMLA); *Singh*, 911 F. Supp. 2d at 242.

Before addressing whether each of the five defendants named in plaintiff's complaint falls within this definition, the court must also determine whether, because the individuals sued are employees of a state agency, the rule permitting individual liability applies. The courts that have addressed this question are markedly split. *See Wanamaker v. Westport Bd. of Educ.*, 899 F. Supp.2d 193, 200 (D. Conn. 2012) (citing cases). That the individual liability portion of the FMLA's definition of employer, 29 U.S.C. § 2611(4)(A)(ii)(I), does not refer to its public agency provision, 29 U.S.C. § 2611(4)(a)(iii), has troubled the Sixth Circuit, which has held that individual liability does not lie against supervisors employed by public agencies.

*Mitchell v. Chapman*, 343 F.3d 811, 828-29 (6th Cir. 2003). The Eleventh

Circuit, too, has held that "a public official sued in his individual capacity is

not an 'employer' subject to individual liability under the [FMLA]." *Wascura*

*v. Carver*, 169 F.3d 683, 686 (11th Cir. 1999). Three other circuit courts,

however, have reached a contrary conclusion, discerning no reason to

distinguish between rules governing public and private employers.

*Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 415-17

(3d Cir. 2012); *Modica v. Taylor*, 465 F.3d 174, 184 (5th Cir. 2006); *Darby v.*

*Bratch*, 287 F.3d 673, 681 (8th Cir. 2002).

It appears that the Second Circuit has yet to squarely address this

question. *Wanamaker*, 899 F. Supp. 2d at 201. At least three district courts

within this circuit, however, have accepted the reasoning of the Third, Fifth,

and Eighth Circuits, and have concluded that individual liability may be

imposed against an employee of a public agency where the employee may

be regarded as an employer under the FMLA. *Wanamaker*, 899 F. Supp. 2d

at 201-02; *Santiago v. Conn. Dep't of Transp.*, No. 12-CV-0132, 2012 WL

5398884, at *4 (D. Conn. Nov. 5, 2012); *Smith v. Westchester Cnty.*, 769 F.

Supp. 2d 448, 473 (S.D.N.Y. 2011). Because I similarly find the reasoning

set forth in *Haybarger*, *Modica*, and *Darby* persuasive, I recommend a

finding, at least for purposes of this initial order, that FMLA liability may be

imposed upon individual defendants employed by the Home.

The analysis of individual liability, however, does not end there. The court must also determine whether plaintiff's complaint alleges sufficient facts demonstrating that the individual defendants possessed the requisite authority to hire, fire, and supervise, determine such rates and methods of pay, and maintain employment records. *Housel*, 6 F. Supp. 3d at 315. When liberally construed, I find that plaintiff's complaint is sufficient in this regard with respect to defendants Dzwonczyk, the Medical Director and Acting Administrator of the Home; Norton, the Director of Human Resources; Parker, the Home's Nutritional Services Administrator 2; and Murphy, plaintiff's supervisor. Plaintiff's complaint, however, fails to reveal any basis to conclude that defendant Fairchild, who is identified only as plaintiff's co-worker, could qualify as an employer under FMLA. Accordingly, I recommend that plaintiff's retaliation claim against defendant Fairchild be dismissed.

### d. Eleventh Amendment/Sovereign Immunity

As the primary defendant, plaintiff's complaint names the Home, his former employer, which is apparently located in Oxford, New York. While plaintiff's complaint is not entirely clear on this issue, publicly available information reveals that the New York State Department of Health owns and

operates the Home. New York State, http://www.nysvets.org (last visited April 8, 2015). The next issue to be addressed is whether the FMLA admits of liability against a state and its agencies, or instead liability against such a defendant is precluded by the Eleventh Amendment and the doctrine of sovereign immunity.

It is well-established, that, where a state has not waived sovereign immunity, it is immune from suit for damages. *Coleman v. Court of Appeals of Md.*, 132 S. Ct. 1327, 1333 (2012); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-73 (2000). As an exception to this principle, "Congress may abrogate the States' immunity from suit pursuant to its powers under [section] 5 of the Fourteenth Amendment." *Coleman*, 132 S. Ct. at 1333. In *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721 (2003), the Court concluded that Congress could subject states to suit for violations of 29 U.S.C. § 2612(a)(1)(A)-(C), commonly referred to as the "family-care provision," discerning that family-leave policies in the states differentiated on the basis of sex. *Hibbs*, 538 U.S. at 726. Later, however, in *Coleman*, the Court concluded that Congress did not validly abrogate the states' immunity from suit with respect to the "self-care provision," 29 U.S.C. § 2612(a)(1)(D), because no evidence "of a pattern of state constitutional violations accompanied by a remedy drawn in narrow terms to address or prevent

those violations" had been presented. *Coleman*, 132 S. Ct. at 1334-35; *accord, Diaz v. Mich. Dep't of Corrs.*, 703 F.3d 956, 961(6th Cir. 2013). Because plaintiff's claims of retaliation in this case arise under the FMLA's self-care provision (because he allegedly requested leave due to his medical condition), I recommend that his claims in this case against the Home be dismissed based on the doctrine of sovereign immunity.[5] *See Bryant v. Tex. Dep't of Aging & Disability Servs.*, --- F.3d ----, No. 14-CV-20278, 2015 WL 1379955, at *3-4 (5th Cir. Mar. 25, 2015) (finding that sovereign immunity precluded plaintiff's retaliation claim against state department-defendant because it implicated the FMLA's self-care provision); *Leahy-Lind v. Me. Dep't of Health & Human Servs.*, No. 13-CV-0389, 2014 WL 4681033, at *8 (D. Me. Sept. 19, 2014) (finding the

---

[5]    Plaintiff's claims asserted against the Home seeking both monetary and injunctive relief should be dismissed. A plaintiff seeking prospective injunctive relief from a state or state agency "must name as defendant a state official rather than the state or a state agency directly." *Santiago v. N.Y. State Dep't of Corr. Servs.*, 945 F.2d 25, 32 (2d Cir. 1991) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984)); *see also Tiraco v. N.Y. State Bd. of Elections*, 963 F. Supp. 2d 184, 192 (E.D.N.Y. Aug. 7, 2013) (dismissing the plaintiff's claims asserted against the New York State Board of Elections based on sovereign immunity, notwithstanding that the plaintiff sought prospective injunctive and declaratory relief, because he "failed to name any state official as a defendant"). In addition, plaintiff's damage claims asserted against defendants Dzwonczyk, Norton, Parker, and Murphy should be dismissed to the extent they are sued in their official capacities because a suit against a state official "is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *accord, e.g., Sullivan v. N.Y. State Dep't of Corrs.*, No. 07-CV-6133, 2009 WL 3189869, at *5-6 (W.D.N.Y. Aug. 31, 2009) (dismissing suit for damages against a state official in his official capacity on the basis of sovereign immunity). To the extent plaintiff seeks damages against those individuals in their individual capacities, as well as prospective injunctive relief in their official capacities, however, those claims should survive.

state agency-defendant was immune from suit seeking monetary damages because the plaintiff's retaliation claim implicates the self-care provision of the FMLA); *Bass v. Univ. of Ark. at Pine Bluff*, No. 12-CV-00286, 2014 WL 4630459, at *15 (E.D. Ark. Sept. 16, 2014) (finding plaintiff's retaliation claim, to the extent it implicated the FMLA's self-care provision, barred by the Eleventh Amendment); *see also Amoroso v. Bucks Cnty. Court of Common Pleas*, No. 13-CV-0689, 2014 WL 3767000 at *3-4 (E.D. Pa. July 31, 2014); *Humphrey v. Kan. Dep't of Wildlife Parks & Tourism*, No. 13-CV-4025, 2013 WL 4857889, at *3 (D. Kan. Sept. 10, 2013); *Fields v. Dep't of Pub. Safety*, 911 F. Supp. 2d 373, 382-83 (M.D. La. Nov. 27, 2012); *Reinhold v. Cnty. of York, Pa.*, No. 11-CV-605, 2012 WL 4104793, at *9-10 (M.D. Pa. Aug. 31, 2012).

### C.   Whether to Grant Leave to Amend

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead where court could "not

determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). Having recommended dismissal of plaintiff's damage claims against the Home and one of the individual defendants, the court must determine whether plaintiff is entitled to the benefit of this general rule.

In this instance it is possible that, if permitted leave to amend, plaintiff could include sufficient additional factual allegations to give rise to a claim of unlawful denial of FMLA leave, and to support a finding that defendant Fairchild qualifies as an employer under the FMLA's definition of that term. I therefore recommend that plaintiff be granted leave to with respect to both the denial-of-leave claim and his retaliation claim against defendant Fairchild. I further recommend, however, that plaintiff not be afforded leave to amend with respect to his claims against the Home and his damage claims asserted against the individual defendants sued in their official capacities because it is apparent that his pursuit of those claims is barred by sovereign immunity and no further pleading will remove this obstacle.

In the event plaintiff chooses to file an amended complaint, he is advised that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of

general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *Pourzandvakil v. Humphry*, No. 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in his amended complaint, plaintiff must clearly set forth the facts that give rise to the claim, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, plaintiff is informed that any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotation marks omitted)).

III.    SUMMARY AND CONCLUSION

Turning first to plaintiff's application for leave to proceed *in forma pauperis*, I find that he has demonstrated his eligibility for that status. Addressing the plaintiff's complaint, which is not a model of clarity, I find it should be accepted for filing to the extent it asserts a retaliation claim under the FMLA against defendants Dzwonczyk, Norton, Parker, and Murphy. To

the extent that plaintiff has named the New York State Veterans Home as a defendant, I conclude plaintiff's claims against that defendant are barred by sovereign immunity.

It is therefore hereby

ORDERED that plaintiff's application for leave to proceed *in forma pauperis* in this action (Dkt. No. 2) is GRANTED; and it is further hereby respectfully

RECOMMENDED that plaintiff's complaint be accepted for filing as follows:

(1)    All of plaintiff's claims for damages and injunctive relief asserted against the Home be dismissed with prejudice;

(2)    All of plaintiff's damage claims asserted against all of the individual defendants in their official capacities be dismissed with prejudice;

(3)    Plaintiff's FMLA claim asserted against all of the individual defendants based on an allegation that his request for FMLA leave was unlawfully denied be dismissed without prejudice and with leave to amend, except that plaintiff should not be granted leave to amend his complaint to include a claim seeking damages against these individuals in their official capacities in accordance with the court's analysis regarding sovereign immunity;

(4)    Plaintiff's retaliation claims, asserted against defendants Dzwonczyk, Norton, Parker, and Murphy in their individual capacities, seeking damages survive;

(5)    Plaintiff's retaliation claims, asserted against defendants Dzwonczyk, Norton, Parker, and Murphy in their official capacities, seeking prospective injunctive relief claims survive;

(6)    Plaintiff's retaliation claims asserted against defendant Fairchild in her individual capacity seeking damages and plaintiff's retaliation claims asserted against defendant Fairchild in her official capacity seeking prospective injunctive relief be dismissed without prejudice and with leave to amend; and it is further

RECOMMENDED that in the event this recommendation is adopted, the court include in its order approving the report and recommendation the following language:

ORDERED as follows:

(1)    The clerk of the court shall issue summonses and forward them with copies of the amended complaint to United States Marshal, along with packets containing General Order 25, which sets forth this district's Civil Case Management Plan, for service upon the named defendants.

(2)    The clerk is directed to schedule a Rule 16 conference.

(3)    Subsequent to service of process on defendants, defendants or their counsel shall file a formal response to plaintiff's complaint as provided for in the Federal Rules of Civil Procedure.

(4)    All pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St.,

Syracuse, New York 13261-7367. **Any paper sent by a party to the court or the clerk must be accompanied by a certificate showing that a true and correct copy of same was mailed to all opposing parties or their counsel. Any document received by the clerk or the court which does not include a certificate of service showing that a copy was served upon all opposing parties or their attorneys will be returned, without processing.** Plaintiff must comply with any requests by the clerk's office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions, which must be returnable before the assigned district judge with proper allowance for notice as required by the Rules. **Plaintiff is also required to promptly notify the clerk's office and all parties or their counsel of any change in plaintiff's address; his failure to do so will result in the dismissal of this action;** and it is further

ORDERED that the clerk of the court shall serve a copy of this order on plaintiff in accordance with the local rules.

Dated:       April 10, 2015
                 Syracuse, New York

David E. Peebles
U.S. Magistrate Judge