**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RANDALL SCOTT TIFFANY,**

                       **Plaintiff,**

  vs.                                        **3:15-cv-00108**
                                                    **(MAD/DEP)**

**PHILIP J. DZWONCZYK, Medical Director,**
**Acting Administrator; BONNIE NORTON,**
**Director Human Resources; SUSAN PARKER,**
**Nutritional Services Administrator 2; and**
**DEBORAH MURPHY,**

                        **Defendants.**

_____

**APPEARANCES:**                                   **OF COUNSEL:**

**RANDALL SCOTT TIFFANY**
334 Brown Gale Road
McDonough, New York 13801
Plaintiff *pro se*

**OFFICE OF NEW YORK**
**STATE ATTORNEY GENERAL**              **WILLIAM A. SCOTT, AAG**
The Capitol
Albany, New York 12224
Attorney for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     On January 29, 2015, Plaintiff *pro se* commenced this action against the New York State Veterans Home (the "Home"); Cynthia Fairchild, a co-worker; Deborah Murphy, identified as a supervisor; Bonnie Norton, the Director of Human Resources; Philip J. Dzwonczyk, the Medical Director and Acting Administrator; and Susan Parker, identified as Nutritional Services Administrator 2. Dkt. No. 1 at 1-2. In his complaint, Plaintiff alleged violations of his rights

under the Family and Medical Leave Act "FMLA", 29 U.S.C. § 2601 *et seq*, and under Title VII of the Civil Rights Act of 1964, as codified by 42 U.S.C. § 2000e *et seq*. *Id*. Plaintiff's complaint asserted a retaliation claim under the FMLA, alleging he was unlawfully discharged for requesting leave pursuant to the FMLA. *See* Dkt. No. 4 at 9. Plaintiff also asserted that he "felt afraid and threatened," and "felt his health and safety were at risk" in the workplace which, when construed liberally, was read to assert a Title VII hostile work environment claim. *See* Dkt. No. 1 at 3, 6, 12. Plaintiff seeks relief in the form of retirement benefits earned by him during his thirty-two-year employment with the Home, medical insurance coverage for life, and compensatory damages in the amount of ten million dollars.

On July 21, 2015, the Court dismissed Plaintiff's claims for damages and injunctive relief asserted against the Home, claims asserted against the individual Defendants in their official capacities, FMLA claim asserted against the individual Defendants based on the allegation that his request for FMLA leave was unlawfully denied, and the Title VII hostile work environment claim. Dkt. No. 7 at 6. Following the July 21, 2015 Order, Plaintiff's only remaining claim was his FMLA retaliation claim against Defendants Dzwonczyk, Norton, Parker and Murphy. *Id*. at 6 n.3.

Currently before the Court is Defendants' unopposed motion to dismiss Plaintiff's complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *See* Dkt. No. 13-4.

## II. BACKGROUND

The claim in this action arises from a confrontation that occurred at the Home on April 2, 2013, between Plaintiff and Defendant Fairchild. Dkt. No. 1 at 4. On April 17, 2013, Defendant Murphy informed Plaintiff that Defendant Fairchild filed a workplace violence statement against him for the incident that occurred on April 2. *Id*. at ¶ 5. Plaintiff submitted a request for FMLA

leave on April 17, 2013 after his conversation with Defendant Murphy. *Id*. at ¶ 6. Thereafter, Plaintiff was absent from work during the months of May, June and July 2013. *See id.* at ¶ 10. Plaintiff returned to work on July 29, 2013. *Id*. at ¶ 12. On August 6, 2013, Plaintiff was notified by Defendant Parker that he was being counseled for threatening Defendant Fairchild and that a notice of disciplinary action would be placed in his personnel file. *Id*. at ¶ 17. Following the meeting with Defendant Parker, Plaintiff left the facility out of concern for his health and safety and contacted the offices of the New York State Inspector General "IG" and Governor Andrew Cuomo. *Id*. at ¶¶ 18-19.

On August 8, 2013, Defendant Norton directed Plaintiff to undergo a medical examination scheduled for September 9, 2013 to determine his fitness for duty. *Id*. at ¶ 21. Plaintiff did not appear at the scheduled appointment in reliance on a note from his physician indicating that it was medically necessary for him to be absent from work whenever there was a conflict in the work environment. *Id*. at ¶ 22. Plaintiff received a notice to appear at an interrogation on September 18, 2013 regarding the allegations of misconduct. *Id*. at ¶ 24. Plaintiff did not appear because he felt threatened by Defendants. *Id*. at ¶ 25. Plaintiff was subsequently notified by Defendant Norton, on September 23, 2013, that he was being placed on involuntary leave without pay. *Id*. at ¶ 3.

On October 2, 2013, Plaintiff received a disciplinary notice addressing unauthorized absences. Dkt. No. 1 at ¶ 26. On October 14, 2013, Plaintiff filed a written complaint with Courtney Burke, the Deputy Secretary for Health. *Id*. at ¶ 27. On October 6, 2014, Plaintiff received notice that his position was being terminated by Defendant Norton. *Id*. at ¶ 28.

### III. DISCUSSION

**A.   Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of

4

entitlement to relief," or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed[,]" *Twombly*, 550 U.S. at 558, 570.

Despite this recent tightening of the standard for pleading a claim, complaints by *pro se* parties continue to be accorded more deference than those filed by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation omitted). As such, *Twombly* and *Iqbal* notwithstanding, this Court must continue to "construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002) (quotation omitted).

**B.     FMLA Retaliation**

The FMLA provides eligible employees an "entitlement" to twelve workweeks per year of unpaid leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1). At the end of a period of FMLA leave, the employee has the right to be restored to the position, or its equivalent, that he or she held prior to taking leave. 29 U.S.C. § 2614(a)(1)(A). However, this right is not absolute. If the employee is unable to perform an essential function of the position because of a physical or mental condition, the employee has no right to restoration to another position under the FMLA. 29 C.F.R. § 825.216(c).

The FMLA expressly creates a private cause of action for equitable relief and money damages against any employer who violates Section 2615. *See* 29 U.S.C. § 2617(a)(2); *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 724-25 (2003). The Second Circuit recognizes two claims under the FMLA: (i) interference with FMLA rights; and (ii) retaliation for exercising

5

FMLA rights.  *See Potenza v. City of New York*, 365 F.3d 165, 167-68 (2d Cir. 2004); *accord Voltaire v. Homes Servs. Sys., Inc.*, 823 F. Supp. 2d 77, 90 (E.D.N.Y. 2011) ("The Second Circuit recognizes a distinction between claims which allege a violation of § 2615(a)(1) – so called 'interference' claims – and claims which allege violations of § 2615(a)(2) and (b), which are called 'retaliation' claims"); *Di Giovanna v. Beth Israel Med. Ctr.*, 651 F. Supp. 2d 193, 198-99 & n.30 (S.D.N.Y. 2009) (citing cases).

To establish a prima facie case of retaliation under the FMLA, a plaintiff must show "1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent."  *Potenza*, 365 F.3d at 168.  An inference of retaliatory intent can be established "when there is a basis for a jury to conclude that 'a causal connection [exists] between the plaintiff's protected activity and the adverse action taken by the employer.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 152 (2d Cir. 2012) (citing *Mack v. Otis Elevator Co.*, 326 F.3d 116, 129 (2d Cir. 2003)); *see also Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010).  "Proof of the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action."  *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988); *see also Davis v. State University of New York*, 802 F.2d 638, 642 (2d Cir. 1986).

In the present matter, the Court finds that Plaintiff has failed to plausibly allege retaliation after exercising FMLA rights because his absence from work beginning August 6, 2013 was not protected by the FMLA.  Plaintiff exercised protected rights under the FMLA when he sought and received leave pursuant to the FMLA from May of 2013 until July 29, 2013.  Dkt. No. 13-4.  Plaintiff alleged that he was terminated after exercising rights protected by the FMLA, but his

6

termination occurred after Plaintiff had been absent from work for over one year from August 6, 2013 to October 6, 2014, a period of absence separate from his leave pursuant to the FMLA. Dkt. No. 1 at ¶ 28. Plaintiff does not allege any facts to indicate that his absence beginning on August 6, 2013 was considered leave pursuant to the FMLA. The FMLA states that employees are entitled to a total of twelve workweeks of leave during any twelve-month period. 29 U.S.C. § 2612(a)(1). Plaintiff's absence beginning on August 6, 2013 was not protected by the FMLA because Plaintiff exhausted his twelve weeks of leave pursuant to the FMLA during the preceding months. Consequently, relief cannot be granted under the FMLA in relation to Plaintiff's absence from work beginning August 6, 2013 because this period of absence was not protected by the FMLA.

Additionally, the Court finds that the Plaintiff has failed to plausibly allege that his termination occurred under circumstances giving rise to an inference of retaliatory intent. First, Plaintiff returned to work following his twelve weeks of leave protected by the FMLA on July 29, 2013. Dkt. No. 1 at ¶ 12. Plaintiff does not allege any facts to suggest that he was not reinstated to his position or that Defendants attempted to terminate his position in response to Plaintiff taking FMLA leave. Rather, Plaintiff left his job at the Home by his own volition on August 6, 2013. *Id*. at ¶ 18. Moreover, on October 2, 2013, Plaintiff was provided with disciplinary notice regarding unauthorized absences after he stopped reporting for work on August 6, 2013 and failed to appear at two scheduled appointments. Plaintiff was not terminated, however, until October 6, 2014, at which time Plaintiff had been absent from work for over one year. *See id.* at ¶¶ 22-28. The significant lapse of time between Plaintiff's exercise of FMLA leave in the months of May, June and July of 2013 and his termination in October of 2014 suggests that there is not a causal connection between Plaintiff's exercise of FMLA leave and the adverse employment action.

Further, Plaintiff has not alleged any facts that indicate he was terminated for seeking or taking FMLA leave during the months of May, June and July of 2013. Therefore, even interpreted as broadly as possible, Plaintiff's complaint has failed to plausibly state a claim for which relief can be granted.

Based on the foregoing, the Court grants Defendants' motion and dismisses Plaintiff's FMLA claim.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 5, 2016
        Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge